UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| IGNACIO LICON, | ) | Case No. 05cv2389-LAB (BLM) |
| | ) | |
| Petitioner, | ) | **REPORT AND RECOMMENDATION FOR** |
| v. | ) | **ORDER DENYING PETITION FOR** |
| | ) | **WRIT OF HABEAS CORPUS** |
| JOHN MARSHALL, Warden; BILL | ) | |
| LOCKYER, Attorney General of | ) | |
| the State of California, | ) | |
| | ) | |
| Respondents. | ) | |

This Report and Recommendation is submitted to United States District Judge Larry Alan Burns pursuant to 28 U.S.C. § 636(b) and Civil Local Rules 72.1(d) and HC.2 of the United States District Court for the Southern District of California.

On December 24, 2005, Petitioner Ignacio Licon, a state prisoner appearing *pro se*, commenced these habeas corpus proceedings pursuant to 28 U.S.C. § 2254. Doc. No. 1. Petitioner challenges his convictions of misdemeanor child molestation, making terrorist threats, and obstructing or resisting an executive officer, as well as his twelve-year state prison sentence. Id.

This Court has considered the Petition (Petition), Respondents'[1] Answer (Answer), and all supporting documents submitted by the parties. Based on the evidence presented in this case, and for the reasons set forth below, this Court **RECOMMENDS** that Petitioner's Petition for Writ of Habeas Corpus be **DENIED**.

**FACTUAL BACKGROUND**

The following facts are taken from the California Court of Appeal's opinion in People v. Licon, No. D039707, slip op. (Cal. Ct. App. July 16, 2003). See Answer Ex. A. This Court presumes the state court's factual determinations to be correct absent clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); Miller-El v. Cockrell, 537 U.S. 322, 340 (2003); see also Parke v. Raley, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from such facts, are entitled to statutory presumption of correctness).

A.   *Prosecution Case*

On the evening of March 18, 2001, 11-year-old Julie M. rode her bicycle to her parents' doughnut shop in El Centro. Appellant came out of a liquor store and approached Julie in the doughnut shop's parking lot. He addressed her in

---

[1] The instant petition names both John Marshall and Bill Lockyer as Respondents. Petition at 1. Lockyer, the Attorney General of the State of California, is not a proper respondent in this case. Rule 2 of the Rules Governing § 2254 Cases provides that the state officer having custody of a habeas petitioner shall be named as respondent. Rule 2(a), 28 U.S.C. foll. § 2254. Because Petitioner is currently incarcerated at the California Mens Colony, only John Marshall, warden of that facility, was properly named. The Attorney General neither moved to dismiss Respondent Lockyer as an improper party, nor filed an Answer on Respondent Lockyer's behalf. See Answer at 1, 22. This Court therefore refers only to Respondent Marshall throughout this Report and Recommendation. Because Respondent Lockyer is an improper respondent, however, this Court **RECOMMENDS** that the allegations against Respondent Lockyer be dismissed.

Spanish, a language she did not understand.  Julie attempted to avoid appellant but he blocked her path, grabbed her bicycle and backed her up against the wall of a building.

As Juan Garcia drove his taxi into the shop's parking lot, he saw appellant holding Julie's bike and blocking her. Garcia told appellant to let her go.  As Garcia started to get out of the cab, appellant approached him in a menacing manner and grabbed his wrist.  As Garcia got out, he again told appellant to let Julie go.  Appellant asked: "What do you care?  What is it to you?"  Garcia stated he was a friend of Julie's family.  Appellant replied he wanted to go to the bus depot and wanted Garcia to take him.  Appellant stated that first he "wanted to fuck this little girl."

Garcia told Julie to go into the doughnut shop, drove to another part of the parking lot and called the police. Appellant followed Julie into the shop where he bought coffee and doughnuts and went back outside.  Within five to ten minutes police officers arrived and contacted appellant. Julie and Garcia were interviewed and appellant was placed under arrest.

Appellant was transported to the police station.  As Officer Shannon Fox was reading him his rights, appellant told the officer to listen.  Appellant told the officer to "let him sleep it off in the jail and he would leave [Fox's] children alone."  Appellant stated he knew where the officer lived because a friend did the officer's gardening. Appellant stated his friend told him that Fox's wife "was a pretty little blonde."  Appellant threatened to kill the officer's family when he was not at home.

Appellant's stepsister Elizabeth V. testified that between 1975, when she was six or seven years old, and 1980 appellant raped and sexually assaulted her on a weekly or monthly baiss [sic].  Diana C., appellant's stepdaughter, testified that from 1982 to 1986, when she was eight to 12 years old, appellant repeatedly sexually molested her.

B.   *Defense Case*

Appellant testified he was not present at the doughnut shop at the time of the incident and that he did not threaten Officer Fox's family.  In argument counsel stated appellant did not remember being present or making threats because he was intoxicated.  Counsel argued Garcia overreacted to appellant's actions.  Appellant was not molesting Julie. Counsel argued that if appellant did threaten Officer Fox's family, he did so because he was intoxicated and lacked the specific intent to commit the crime.

Answer Ex. A at 2-3.

///

**PROCEDURAL BACKGROUND**

On March 20, 2001, the District Attorney of Imperial County filed a four-count criminal complaint charging Petitioner with terrorist threats in violation of California Penal Code (Penal Code) § 422, misdemeanor child molestation in violation of Penal Code § 647.6(A), obstructing or resisting an executive officer in violation of Penal Code § 69, and battery in violation of Penal Code § 242. Clerk's Transcript, (CT), Lodgment 1 at 1-3. On April 16, 2001, the District Attorney filed an information charging Petitioner with these same four counts. Id. at 5-7.

Petitioner's criminal trial began on October 31, 2001. Id. at 128; Reporter's Transcript, (RT), Lodgment 3, Volume dated October 31, 2001. On November 8, 2001, after jury deliberations began, the State moved to amend the information to allege a prior conviction of criminal threats as an enhancement pursuant to Penal Code §§ 667(a)(1), (b)-(i) and Penal Code §§ 1170.12(a)-(d). CT, Lodgment 1 at 173-79. The trial court granted the State's motion to amend on November 9, 2001. Id. at 180.

That same day, a jury found Petitioner guilty of criminal threats, obstructing or resisting an executive officer, and misdemeanor child molestation. Id. at 185-87. The jury acquitted Petitioner of the battery charge. Id. at 184. In a bifurcated proceeding on the amended information's prior conviction allegation, the jury found that Petitioner suffered a prior conviction of criminal threats in violation of Penal Code § 422. Id. at 181-83. On February 26, 2002, the trial court imposed a total sentence of twelve years, which was comprised of consecutive sentences of six years on the criminal threats charge, one year for the misdemeanor child molestation charge, and five years for the prior conviction enhancement. Id. at 211-12, 240-41. The trial

court also ordered Petitioner to pay a total of $500.00 in restitution. Id. at 212, 241.

Petitioner appealed to the California Court of Appeal, Fourth Appellate District, Division One.  Appellant's Opening Brief, Lodgment 5.  On direct appeal, Petitioner argued, among other things, that the trial court erroneously admitted evidence of two prior sexual offenses, improperly permitted the filing of an amended information after the jury reached its verdict, and failed to give *sua sponte* a standard jury instruction regarding the weighing of conflicting evidence.  Id. at 10-20, 44-49, 61-68.  On July 16, 2003, the California Court of Appeal affirmed Petitioner's convictions in an unpublished opinion.  Answer Ex. A.  Petitioner then filed a petition for review in the California Supreme Court, see Petition for Review, Lodgment 8, which was summarily denied without citation of authority.  Order of the California Supreme Court, Lodgment 9.

Between April 13, 2003 and September 6, 2004, Petitioner sought collateral review of his convictions and sentence in the California Superior Court, the California Court of Appeal, and the California Supreme Court.  Petitions for Writ of Habeas Corpus, Nos. D041996, D045136, and S129069, Lodgments 11-14.  In these state habeas petitions, Petitioner alleged an ineffective assistance of counsel claim predicated on his defense counsel's failure to call various alibi witnesses, see Lodgment 11 at 3-3f; Lodgment 12 at ¶ 6; Lodgment 13 at ¶ 6; Lodgment 14 at ¶ 6, a violation of his Sixth Amendment right to conflict free counsel, see Lodgment 12 at ¶ 6; Lodgment 13 at ¶ 6; Lodgment 14 at ¶ 6, and a violation of his right to self-representation as described in Faretta v. California, 422 U.S. 806 (1975).  Lodgment 12 at ¶ 7; Lodgment 13 at ¶ 7; Lodgment 14 at ¶ 7.  The California courts denied

the petitions.   In particular, on August 11, 2004, the California Superior Court denied Petitioner's habeas petition "for lack of proof of proper service upon the proper real party in interest."  Lodgment 13 Ex. J-1.  The California Court of Appeal issued a denial on October 22, 2004, reasoning that (1) Petitioner failed to establish how any alibi witness testimony would have benefitted his defense, (2) Petitioner made no showing that his defense counsel suffered from a conflict of interest, and (3) the trial court correctly denied as untimely Petitioner's during-trial request to represent himself.[2]  Answer Ex. B. at 1-2.  On October 12, 2005, the California Supreme Court summarily denied the last of Petitioner's state habeas petitions.  Lodgment 15.

On December 24, 2005, Petitioner filed the instant Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  Doc. No. 1. Respondent filed an Answer on March 22, 2006.  Doc. No. 7.  Between May 4, 2006 and August 8, 2006, Petitioner filed one request to file a traverse in excess of ten pages, see Doc. Nos. 10, 13, one request for an evidentiary hearing, see Doc. No. 20, two requests for appointed counsel, see Doc. Nos. 10, 12, 20, three requests for an extension of time in which to file his traverse, see Doc. Nos. 10, 13, 16, 22, and one motion to disqualify the undersigned Magistrate Judge.  Doc. No. 24. This Court denied Petitioner's requests for appointed counsel, for an

---

[2]   The appellate court also noted that to the extent Petitioner asserted the trial court erroneously denied his People v. Marsden, 2 Cal. 3d 118 (Cal. 1970) motion, such a claim was not cognizable on habeas absent special circumstances, none of which were presented in his state habeas petition.  Answer Ex. B at 1.  With regard to Petitioner's self-representation claim, the appellate court similarly underlined that the issue could have been raised on appeal and thus was not cognizable on habeas review.  Id. at 2.  The appellate court further explained that were it to reach the merits of Petitioner's self-representation claim, it would deny the petition under the circumstances presented.  Id.

evidentiary hearing, and to disqualify the undersigned Magistrate Judge, see Doc. Nos. 11, 21, 25, granted in part Petitioner's request to file a traverse in excess of ten pages, see Doc. No. 11, and granted each of Petitioner's three requests for an extension of time to file a traverse. Doc. Nos. 11, 18, 23.   By Order dated August 1, 2006, this Court instructed Petitioner to file a traverse on or before August 16, 2006. Doc. No. 23.   To date, Petitioner has not filed a traverse.   As a result, this Court reviews Petitioner's habeas claims as presented in his petition.

### STANDARD OF REVIEW

Title 28 of the United States Code, section 2254(a), sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

The Petition was filed after enactment of the Anti-terrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214.   Under 28 U.S.C. § 2254(d), as amended by AEDPA:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Summary denials do constitute adjudications on the merits.  See Luna v. Cambra, 306 F.3d 954, 960 (9th Cir. 2002).  Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision.  Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991).

A state court's decision is "contrary to" clearly established federal law if the state court: (1) "arrives at a conclusion opposite to that reached" by the Supreme Court on a question of law; or (2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court's]."  Williams v. Taylor, 529 U.S. 362, 405 (2000).

A state court's decision is an "unreasonable application" of clearly established federal law where the state court "identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003).  "[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. . . .  Rather, that application must be objectively unreasonable."  Andrade, 538 U.S. 75-76 (emphasis added) (internal quotation marks and citations omitted).  Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the United States Supreme] Court's decisions."  Williams, 529 U.S. at 412.

Finally, habeas relief is also available if the state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court."  28 U.S.C. § 2254(d)(2).  A state court's

1  decision will not be overturned on factual grounds unless this Court

2  finds that the state court's factual determinations were objectively

3  unreasonable in light of the evidence presented in the state court

4  proceeding.  See Miller-El, 537 U.S. at 340.  This Court will presume

5  that the state court's factual findings are correct, and Petitioner may

6  overcome that presumption only by clear and convincing evidence.  28

7  U.S.C. § 2254(e)(1).

8  **DISCUSSION**

9      Petitioner challenges the constitutional validity of his criminal

10  convictions and subsequent sentence on five separate grounds.  Petition

11  at 6-10.  First, Petitioner argues that the trial court erroneously

12  admitted evidence of his prior sexual offenses against minors in

13  violation of California Evidence Code § 352 and his rights to due

14  process and a fair trial.  Id. at 6.  Second, Petitioner alleges that

15  the trial court disregarded its duty to instruct the jury on weighing

16  conflicting evidence as provided in CALJIC No. 2.22.  Id. at 7.  Third,

17  Petitioner claims that the trial court improperly permitted amendment

18  of the information, adding a prior serious felony allegation while the

19  jury was deliberating, in violation of his federal and state due process

20  rights.  Id. at 8.  Fourth, Petitioner contends that defense counsel's

21  failure to call certain alibi witnesses and an unspecified conflict of

22  interest deprived him of effective assistance of counsel, and that that

23  unspecified conflict of interest also deprived him of his Sixth

24  Amendment right to counsel.  Id. at 9.  Fifth, Petitioner asserts that

25  the trial court improperly denied his request to represent himself.  Id.

26  at 10.

27      Respondent argues that the state courts' resolution of Claims One,

28  Three, Four, and Five was neither contrary to nor involved an

unreasonable application of clearly established federal law, nor was based on an unreasonable determination of the facts presented.  Answer at 11-12, 13-16, 19-21.  Respondent argues that Claim Two fails to state a cognizable federal claim.[3]  Id. at 12-13.  Respondent also argues that Claim Five is procedurally barred.  Id. at 16-19.  For these reasons, Respondent maintains that the instant habeas petition must be denied in its entirety.  Id. at 22.

### A.   Admission Of Prior Sexual Offense Evidence

In his first claim for habeas relief, Petitioner argues that the trial court's admission of testimony regarding prior sexual offenses not only violated his rights to due process and to a fair trial, but also ran afoul of California Evidence Code § 352.  Petition at 6.  In particular, Petitioner alleges that the trial court failed to assess the probative value and the prejudicial nature of the prior offense testimony as required under California Evidence Code § 352.  Id.

Respondent contends that the appellate court properly affirmed the trial court's admission of this evidence.  Answer at 11.  In support, Respondent notes that the Ninth Circuit has determined that the federal equivalent of California Evidence Code § 1108—the provision under which the evidence was admitted—comports with federal due process standards. Id. (citing United States v. LeMay, 260 F.3d 1018, 1027 (9th Cir. 2001)).  Respondent also argues that Petitioner fails to make the requisite showing that the evidence's admission had a "substantial and injurious effect or influence in determining the jury's verdict." Answer at 12 (citing Brecht v. Abrahamson, 507 U.S. 619, 623 (1993)).

---

[3]  Similarly, Respondent argues that to the extent Petitioner alleges in Claim One that the trial court violated the requirements of California Evidence Code § 352, he fails to present a federal question.  Answer at 12-13.

Finally, Respondent asserts Petitioner's claim with respect to California Evidence Code § 352 fails to state a federal question. Answer at 12.

As referenced above, prior to trial, the prosecution sought to admit the testimony of Elizabeth V. and Diana Y., Petitioner's stepsister and stepdaughter, to support the child molestation charge. RT, Lodgment 3, Volume dated October 26, 2001 at 28-98. Both women offered testimony that between the approximate ages of seven and twelve, Petitioner sexually assaulted each of them on a regular basis. Id. at 42-81. Over Petitioner's objection, the trial court permitted the prosecution to present this testimony at trial pursuant to California Evidence Code § 1108, which creates an exception to the prohibition against the admission of character evidence to demonstrate a defendant's propensity to commit a particular crime. Id. at 978; see also RT, Lodgment 3, Volume dated November 2 and 5, 2001 at 124-65. That section provides in pertinent part:

> [i]n a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352.

California Evidence Code § 1108(a).[4]  In deciding whether to admit prior sexual offense evidence, a trial court may consider such factors as its nature, relevance, remoteness, likelihood of confusing the issues, similarity to the charged offense, and prejudicial impact. See People v. Falsetta, 21 Cal. 4th 903, 916-17 (Cal. 1999).

_____

[4]   California Evidence Code § 352 endows the court with broad discretion to exclude evidence "if its probative value is substantially outweighed by the probability that its admission will" create undue prejudice, confuse the issues, or mislead the jury.  California Evidence Code § 352.

The California Supreme Court summarily denied Petitioner's request for review with respect to this claim, so this Court must look through to the last reasoned state court decision.  <u>See</u> <u>Ylst</u>, 501 U.S. at 801-06.  The last reasoned state court decision on this issue came from the California Court of Appeal.  Answer Ex. A at 4-8.  After a thorough discussion of a trial court's duty to assess whether the probative value of a defendant's prior sexual offenses outweighs undue prejudice concerns, <u>see</u> <u>id.</u> at 5-6, the appellate court rejected Petitioner's claims:

> Appellant was charged with molesting a child.  (Pen. Code, § 647.6, subd. (a).)  That offense requires proof that the defendant's conduct was motivated by an unnatural or abnormal sexual interest in the victim.  (*People v. McFarland* (2000) 78 Cal.App.4th 489, 494.)  In a prosecution for that offense, therefore, evidence of a propensity to the commission of sexual offenses against children is, in light of section 1108, relevant.

> In deciding whether the trial court abused its discretion in admitting propensity evidence over appellant's section 352 objection, we review a series of factors.  First, we ask whether the uncharged acts were more or less inflammatory than the charged conduct.  (*People v. Harris* (1998) 60 Cal.App.4th 727, 736-737.)  While it is, of course, difficult to evaluate such matters, and while sexual offenses against children always have a high potential for inflaming a jury, we do not believe the uncharged conduct in this case was significantly more inflammatory than the charged conduct. The uncharged conduct involved serious sexual offenses over extended periods of time and on repeated occasions.  On the other hand, the victim of the charged offense was a stranger to appellant and his conduct was extremely disturbing.  While no actual touching occurred, the evidence was that appellant intended to rape the child.  We conclude the charged and uncharged acts equally distressing.

> Next, we review the probability of confusion of issues inherent in the presentation of propensity evidence.  In this regard courts have considered whether the defendant was convicted of the uncharged offenses.  The concern is that if the defendant was not convicted of those offenses, the jurors may wish to punish the defendant in the case presently before them for that earlier conduct.  Such desire confuses the jury's consideration of the charged offenses.  (*People v. Branch* (2001) 91 Cal.App.4th 274, 284; *People v. Harris*, *supra*, 60 Cal.App.4th at pp. 738-739.)

1    In this case there was no testimony at trial concerning
2    whether appellant was charged or convicted with regard to
     either of the claimed earlier sex offenses.  Elizabeth V. did
     testify that it was not until three months before trial that
3    she told the authorities about appellant's sexual assaults on
     her.
4

5    With no knowledge that appellant had been charged with
     or convicted of the uncharged prior sexual offenses, there
     was at least some possibility the jury might wish to punish
6    him for his sexual crimes against all three victims.  Some
     confusion might, therefore, have been caused by introduction
7    of the uncharged offenses.  Still, it is certainly not the
     case that only prior charged offenses resulting in
8    convictions are admissible under section 1108 or for that
     matter any section allowing the introduction of prior bad
9    acts.  Under the facts of this case we conclude that while a
     danger of confusion existed, it did not require exclusion of
10   the offered other crimes evidence.

11   Next, we consider the remoteness of the uncharged
     offenses.  Courts have reasoned that as the time between the
12   charged and uncharged offenses grows longer, it is less
     likely the defendant has a propensity to commit the charged
13   offense.  Thus, as the uncharged offense becomes more remote,
     it becomes less probative and more prejudicial.  (*People v.*
14   *Branch*, *supra*, 91 Cal.App.4th at. pp. 284-285.)

15   Here, the crimes against Elizabeth V. ended
     approximately 21 years before trial and those against Diana
16   C. approximately 14 years before.  The offenses were remote.
     Nonetheless, there were multiple victims who were repeatedly
17   assaulted over a lengthy period of time.  A court could
     reasonably believe that the uncharged offenses in this case
18   retained strong probative value.

19   While the matter is a close one, we cannot say the trial
     court abused its discretion in admitting the evidence of
20   appellant's prior sexual assaults.

21   Id. at 6-8.

22        1.   **Rights To Due Process And To A Fair Trial**

23   The admissibility of evidence is a matter of state law, and is not

24   reviewable in a federal habeas corpus proceeding.  See Estelle v.

25   McGuire, 502 U.S. 62, 67 (1991); Middleton v. Cupp, 768 F.2d 1083, 1085

26   (9th Cir. 1985).  Notwithstanding this general proposition, a trial

27   court's admission of prejudicial evidence may warrant habeas relief if

28   the admission was fundamentally unfair and resulted in a denial of due

13                                          05cv2389-LAB (BLM)

process.  McGuire, 502 U.S. at 72.  The failure to comply with state
rules of evidence alone, however, is neither a necessary nor a
sufficient basis for granting federal habeas relief on due process
grounds.  See Jammal v. Van de Kamp, 926 F.2d 918, 919-20 (9th Cir.
1991).  Only if there are no permissible inferences that the jury may
draw from the evidence can its admission rise to the level of a due
process violation.  Id. at 920.  Even then, the evidence in question
must "be of such quality as necessarily prevents a fair trial."  Id.
(quoting Kealohapauole v. Shimoda, 800 F.2d 1463, 1465 (9th Cir. 1986)).

The appellate court's review of the admission of Elizabeth V.'s and
Diana Y.'s testimony was neither contrary to nor an unreasonable
application of clearly established federal law.  As an initial matter,
the Supreme Court has expressly left open the question whether the
admission of propensity evidence of this kind violates due process.  See
McGuire, 502 U.S. at 75 n.5 (expressing "no opinion on whether a state
law would violate the Due Process Clause if it permitted the use of
'prior crimes' evidence to show propensity to commit a charged crime").
Thus, to the extent Petitioner attempts to allege that California
Evidence Code § 1108 violates due process by allowing admission of prior
sexual offense evidence for the purpose of proving disposition to commit
the present offense, Petitioner is mistaken.  As such, the appellate
court's decision with respect to this claim was not contrary to clearly
established United States Supreme Court precedent.

Next, as Respondent correctly underlines, the Ninth Circuit's
rejection of a due process challenge to Federal Rule of Evidence 414,
the federal equivalent of California Evidence Code § 1108, guides this
Court's consideration of similarly patterned California law.  See LeMay,
260 F.3d at 1024, 1030.  In LeMay, the Ninth Circuit determined that

application of Federal Rule of Evidence 403—the federal analog of California Evidence Code § 352—eliminates any due process concerns posed by Federal Rule of Evidence 414 because Rule 403 provides a filtering mechanism through which a trial court may exclude evidence that is so prejudicial as to deprive a defendant of his right to a fair trial. <u>Id.</u> at 1026-27. Modeled after Federal Rule of Evidence 414, California Evidence Code § 1108 functions in an analogous fashion to this federal rule, and is similarly subject to a protective filtering mechanism, namely, California Evidence Code § 352.

In this case, the trial court thoroughly considered the prior sexual offense testimony before authorizing its admission, holding a lengthy *in limine* hearing during which the court repeatedly acknowledged its obligations under California Evidence Code § 352. RT, Lodgment 3, Volume dated October 26, 2001 at 14-21, 26-32, 35-97. Even then, the trial court limited the testimony to the witnesses' accounts of sexual abuse, and allowed the defense to present testimony to impeach the witnesses' credibility. <u>Id.</u> at 97. Moreover, as the above excerpt confirms, the appellate court conducted a careful review of both the probative value and the prejudicial nature of the evidence in question, assessing a number of individualized factors to determine whether the evidence was properly admitted. Answer Ex. A at 6-8. For example, while recognizing the considerable potential for inflaming the jury that accompanies sexual offenses against children, the appellate court found that the uncharged acts of other sexual abuses were not significantly more inflammatory than the charged conduct. <u>Id.</u> at 6. The appellate court also found that any danger that the testimony would confuse or mislead the jury was minimal, and did not mandate the evidence's exclusion. <u>Id.</u> at 7. In addition, the appellate court explained that

the prior incidents of sexual abuse, however remote, retained strong probative value. Id. After considering all such factors, the appellate court concluded that the nature of the evidence, although prejudicial, was highly probative to the child molestation charge, and as a result, the trial court had not abused its discretion in admitting the evidence. Id. at 8. Given the trial court's thorough assessment of the evidence under California Evidence Code § 352, coupled with the appellate court's equally thorough review of that decision, this Court cannot conclude that Petitioner's trial was rendered fundamentally unfair because of the admission of Elizabeth V.'s and Diana Y.'s testimony.

Moreover, even assuming the prior sexual offense evidence was improperly admitted, Petitioner is entitled to relief only if the evidentiary error had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 637. Here, the victim, an independent eyewitness, and the arresting police officer provided direct evidence separate from Elizabeth V.'s and Diana Y.'s propensity testimony that Petitioner committed the offenses charged. RT, Lodgment 3, Volume dated November 2 and 5, 2001 at 16-37, 38-67, 88-123. As Respondent notes, this direct evidence was contradicted only by Petitioner's own testimony, which, given the verdict, the jury found less than credible. Id., Volume dated November 6, 2001 at 203-352; Volume dated November 7, 2001 at 398-404. As such, even if the trial court erroneously admitted the prior sexual offense evidence, the error was harmless, and does not provide a basis for habeas relief.

### 2.   Compliance With California Evidence Code § 352

Again, Petitioner contends that the trial court admitted Elizabeth V.'s and Diana Y.'s testimony in violation of California Evidence Code § 352. Petition at 6. Petitioner insists that the trial court failed

1  to weigh the probative value and prejudicial nature of this testimony,

2  despite its obligation to do so under that evidentiary rule.  Id.

3      To the extent Petitioner argues that the trial court failed to

4  adhere to the requirements of California Evidence Code § 352, he alleges

5  an error in the application of state law not cognizable on federal

6  habeas.  See McGuire, 502 U.S. at 67-68 (emphasizing that "it is not the

7  province of a federal habeas court to reexamine state-court

8  determinations on state-law questions"); Lewis v. Jeffers, 497 U.S. 764,

9  780 (1990) (noting that "federal habeas corpus relief does not lie for

10 errors of state law").  Even assuming that Petitioner successfully

11 stated a federal claim with respect to California Evidence Code § 352,

12 as explained above, the record belies Petitioner's contentions.

13 Accordingly, Petitioner's request for habeas relief on this basis is

14 without merit.

15     In conclusion, this Court finds that the admission of the prior

16 sexual offense evidence did not render Petitioner's trial fundamentally

17 unfair, and did not deprive him of any due process right.  This Court

18 also finds that to the extent Petitioner alleges the trial court

19 disregarded its duties under California Evidence Code § 352, he fails

20 to present a question cognizable on federal habeas.  As such, this Court

21 finds that the California Court of Appeal's decision upholding the

22 admission of this evidence was neither contrary to nor an unreasonable

23 application of clearly established federal law.  See Williams, 529 U.S.

24 at 412-13.  For these reasons, this Court **RECOMMENDS** that Petitioner's

25 first ground for habeas relief be **DENIED**.

26     **B.   The Trial Court's Failure To Provide CALJIC No. 2.22**

27     In his second claim for habeas relief, Petitioner argues that the

28 trial court erred by failing *sua sponte* to instruct the jury in

accordance with CALJIC No. 2.22, which details how to weigh conflicting evidence.[5]  Petition at 7.  Petitioner contends that a trial court is obligated to utilize this standard instruction "in every case in which conflicting evidence has been presented."   Id.  Petitioner also maintains that the appellate court incorrectly characterized the trial court's failure as harmless error.  Id.  Respondent counters that this claim fails to present a federal question.  Answer at 12-13.

The California Court of Appeal, the last state court to issue a reasoned decision with regard to this claim, acknowledged that this standard instruction "must be given *sua sponte* in cases in which conflicting evidence is presented."   Answer Ex. A at 10. Notwithstanding this observation, the appellate court declared that this standard instruction "expresses mere matters of common sense and intelligent appraisal," and as such, the trial court's failure to give the instruction was harmless error.  Id.

Petitioner references neither federal law nor cites any constitutional provision in support of his instructional error claim. See Petition at 7.  As previously noted, when reviewing claims for habeas relief, a federal court is limited to deciding whether a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); see also McGuire,

---

[5]  California Jury Instruction Number 2.22 admonishes jurors as follows:

You are not required to decide any issue in accordance with the testimony of a number of witnesses, which does not convince you, as against the testimony of a lesser number or other evidence, which you find more convincing.  You may not disregard the testimony of the greater number of witnesses merely from caprice, whim or prejudice, or from a desire to favor one side against the other. You must not decide an issue by the simple process of counting the number of witnesses [who have testified on the opposing sides].  The final test is not in the [relative] number of witnesses, but in the convincing force of the evidence.

CALJIC No. 2.22.

502 U.S. at 67-68.  Here, Petitioner fails to allege that either the trial court's failure to issue CALJIC No. 2.22 or the appellate court's characterization of this failure as harmless error violated any federal constitutional provision or other federal law.  Absent such an assertion, Petitioner fails to state a claim cognizable in a federal habeas petition, and this Court is without authority to grant habeas relief.  28 U.S.C. § 2254(a), (d); see also McGuire, 502 U.S. at 67-68; Jeffers, 497 U.S. at 780.

In a final note, assuming that Petitioner's second claim for habeas relief properly stated a cognizable claim, and assuming that conflicting evidence was presented at trial, Petitioner correctly asserts that the trial court's failure to instruct the jury in accordance with CALJIC No. 2.22 was error.  Nevertheless, Petitioner's jury was thoroughly instructed how to evaluate both witness testimony and other evidence with CALJIC No. 2.11 (production of all available evidence not required), CALJIC No. 2.20 and CALJIC No. 2.23 (believability of witnesses), and CALJIC No. 2.27 (sufficiency of testimony of one witness).  Lodgment 4 at 17-20.  The jury was instructed that Petitioner was to be presumed innocent until his guilt was proven beyond a reasonable doubt.  Id. at 25 (CALJIC No. 2.90, presumption of innocence/reasonable doubt burden of proof).  The jury was also told to consider all instructions "as a whole and each in light of all the others."  Id. at 6 (CALJIC No. 1.01, instructions to be considered as a whole).  When viewed in the context of the instructions as a whole, and given that Petitioner presents no record evidence that the jury actually engaged in the conduct prohibited by CALJIC No. 2.22, the trial court's failure to give that instruction was harmless.  See Brecht, 507 U.S. at 637; see also People v. Snead, 20 Cal. App. 4th 1088, 1097 (Cal.

Ct. App. 1993) (finding that the trial court's failure to instruct the jury in accordance with CALJIC No. 2.22 was not "prejudicial error" considering all other instructions given).   Consequently, Petitioner's complaints with respect to the appellate court's harmless error finding are unfounded.

Because Petitioner seeks habeas relief solely on the basis of an alleged violation of state law, this Court finds this claim fails to present a question cognizable on federal habeas review.   See McGuire, 502 U.S. at 67-68.   Moreover, even assuming Petitioner had stated a federal claim, this Court finds that the claim cannot survive harmless error scrutiny.   Accordingly, this Court **RECOMMENDS** that Petitioner's second claim for habeas relief be **DENIED**.

## C.   Amendment Of The Information

In his third claim for habeas relief, Petitioner argues that the trial court violated his federal and state rights to due process when it allowed the state to amend the information to add a prior serious felony allegation after the jury began to deliberate.   Petition at 8. Petitioner asserts that had the prior serious felony allegation—and the potential exposure to an increased prison term that accompanies such an allegation—been brought to his attorney's attention earlier, counsel would have pursued a different defense.[6]   Id.   Having learned of the prior serious felony allegation after he presented his case, Petitioner claims that the amendment deprived him of due process.   Id.

Respondent contends that Petitioner fails to show the amendment

---

[6]   In particular, Petitioner claims that had his defense counsel been made aware of these allegations earlier in the proceedings, counsel would have more strenuously advised Petitioner either to submit to a psychologist's examination to explore a mental defense, or to enter a plea.   Petition at 8.

resulted in a denial of due process.   Answer at 13-15.   Respondent declares that in evaluating Petitioner's claim, the appellate court properly assessed whether the amendment impermissibly interfered with Petitioner's adequate notice of the prior serious felony charge, or denied him the opportunity to present an informed defense.   Id. at 15 (citing Scott v. Roberts, 777 F. Supp. 897, 900 (D. Kan. 1991)). Respondent therefore claims that the appellate court's decision was neither contrary to nor an unreasonable application of clearly established federal law.   Answer at 15.   Moreover, Respondent claims that even assuming the trial court erroneously allowed the information's amendment, such error was harmless.   Id.   Accordingly, Respondent maintains that Petitioner is not entitled to habeas relief on this claim.   Id.

The California Court of Appeal rejected Petitioner's due process claims.   Answer Ex. A at 17-20.   After a detailed explanation of the sequence of events culminating in the information's amendment, see id. at 17-18, the appellate court reasoned:

> Penal Code section 969a states that when it is discovered that an information fails to allege all of the defendant's prior felony convictions, the information may, upon order of the court, be amended to charge them.   Such amendment may be made at anytime before the jury is discharged.   (*People v. Tindall* (2000) 24 Cal.4th 767, 769-770.)   In deciding whether to allow amendment, the trial court should consider, among any other relevant factors, the reason for the late amendment, whether the amendment is a surprise to the defendant, whether the initial failure to charge the prior affected the defendant's decisions during plea bargaining, and whether other felony convictions were charged originally.   (*People v. Valladoli* (1996) 13 Cal.4th 590, 607-608.)   Our Supreme Court has made clear such decisions are best left to the trial court.   (*Ibid.*)

> Ultimately, granting or denying an amendment pursuant to Penal Code section 969a requires the trial court act with due regard for the administration of justice and fairness to the defendant.   Here, the prosecutor readily conceded she was aware of appellant's prior Penal Code section 422 conviction from the beginning of the case.   She was unaware, however,

that it could be charged as an enhancement under Penal Code
sections 667, subdivision (a)(1), or 667, subdivisions (b)
through (i).  While such ignorance is not to be condoned,
neither should it alone prevent amendment of the information.

   The important question is whether appellant was
prejudiced by the late amendment of the information.
Prejudice in this context, of course, does not consider the
greater sentence appellant received based on the amendment.
The sentence appellant received was the one specified by the
law.  The issue is whether the defense proceeded in any
fashion to its detriment based on the failure of the
prosecution to include in the original information allegation
of the recidivist enhancements.

   The omission could not have affected appellant's plea
bargaining decisions since there was no plea bargaining in
this case.  Nor does it appear the defense would have
proceeded differently in trying the case had the enhancements
been included in the original information.  Counsel argued
below that had he known this was a strike case he would have
tried harder to convince appellant to be examined by a
psychologist and accept a mental defense.  We find this hard
to accept.  Appellant was facing a prison term for serious
crimes based on the original information.  There was
sufficient reason for counsel to use his strongest arguments
in convincing appellant to accept a mental defense even
without knowledge of the enhancing allegations.  In any
event, given appellant's obstinate nature, there is no reason
to believe he would have accepted counsel's suggestion.

   The trial court did not abuse its discretion in allowing
amendment of the information.

Id. at 18-20.

The Sixth Amendment "guarantees a criminal defendant a fundamental
right to be clearly informed of the nature and cause of the charges
against him." Calderon v. Prunty, 59 F.3d 1005, 1009 (9th Cir. 1995).
To determine if a defendant has received fair notice of the charges
against him, reviewing courts first look to the information. See James
v. Borg, 24 F.3d 20, 24 (9th Cir. 1994).  "The principal purpose of the
information is to provide the defendant with a description of the
charges against him in sufficient detail to enable him to prepare his

defense."[7]  Id.  Nevertheless, the federal constitution does not require the government to identify in the charging document the prior convictions it intends to use solely for sentencing purposes.  See Almendarez-Torres v. United States, 523 U.S. 224, 228, 230 (1998) (explaining that an indictment must set forth each element of the crime charged but "need not set forth factors relevant only to the sentencing of an offender found guilty of the charged crime," and underlining that the "prior commission of a serious crime" is a typical sentencing factor).[8]

Federal law authorizes amendment of the information "at any time before the verdict or finding" so long as no "additional or different offense is charged" and if the amendment does not prejudice the defendant's substantial rights.  Fed. R. Crim. P. 7(e).  Moreover, as noted by the California Court of Appeal, California law permits court ordered amendment of an information to include prior convictions if the amendment occurs before the jury has been discharged.  See Penal Code § 969a; see also People v. Tindall, 24 Cal. 4th 767, 782 (Cal. 2000) (explaining that an "information may not be amended to add prior conviction allegations after the jury has been discharged"); People v. Valladoli, 13 Cal. 4th 590, 608-09 (Cal. 1996) (finding post-verdict

---

[7]  The Ninth Circuit recognizes that a criminal defendant can receive constitutionally adequate notice by means other than the charging document.  See Sheppard v. Rees, 909 F.2d 1234, 1236, n.2 (9th Cir. 1989) (explaining that "other means" of adequate notice include a complaint, an arrest warrant, a bill of particulars, or even information gathered during the course of a preliminary hearing).

[8]  In Apprendi v. New Jersey, 530 U.S. 466, 488-90 (2000), the Supreme Court left intact its holding in Almendarez-Torres, and confirmed that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  Apprendi, 530 U.S. at 490.

1   amendment of the information permissible under Penal Code § 969a and in
2   accordance with due process).  With regard to such amendments, however,
3   the "key question is whether an error or omission in an indictment [or
4   information] worked to the prejudice of the accused."  United States v.
5   Normandeau, 800 F.2d 953, 958 (9th Cir. 1986).

6       As an initial matter, this Court finds that the trial court's
7   decision to allow the information's amendment comported with the
8   requirements of the federal constitution.  Both the criminal complaint
9   and the subsequent information set forth in detail each element of the
10  crimes charged.  See CT, Lodgment 1 at 1-3, 5-7.  The charging documents
11  therefore provided Petitioner with a description of the charges against
12  him sufficient to enable the preparation of his defense.  Because the
13  prior conviction was added solely for use in connection with sentencing,
14  under Almendarez-Torres, no federal constitutional violation occurred
15  when the trial court permitted the amendment pursuant to Penal Code §
16  969a.  See Almendarez-Torres, 523 U.S. at 228, 230.  As such, the trial
17  court's amendment of the information to add the sentence enhancement did
18  not violate any federal constitutional right Petitioner possessed.

19      Moreover, the record contradicts any contention by Petitioner that
20  the late filing of the amended information impermissibly interfered with
21  his adequate notice of the prior conviction charge.  For example, during
22  cross-examination, Petitioner acknowledged having previously pled guilty
23  to making criminal threats in violation of Penal Code § 422.   RT,
24  Lodgment 3, Volume dated November 6, 2001 at 286-87; compare id., Volume
25  dated January 21, 1994 at 3-11 (Petitioner's January 21, 1994
26  disposition hearing in which he enters a plea of no contest to the 1994
27  criminal threats charge).   The State's inquiries with regard to
28  Petitioner's criminal history on cross-examination thus alerted both

1   Petitioner and his attorney to the prior conviction.  <u>See</u> <u>Sheppard</u>, 909

2   F.2d at 1236, n.2.  In fact, Petitioner's attorney conceded knowledge

3   of the prior serious felony conviction, but simply maintained he was

4   unaware the prior conviction constituted a strike for sentencing

5   purposes.  RT, Lodgment 3, Volume dated November 8-9, 2001 at 485-86.

6   As a result, Petitioner's suggestion that both he and his attorney were

7   either unaware or had insufficient notice of his earlier criminal

8   threats conviction is unfounded.  <u>See</u> <u>Morrison v. Estelle</u>, 981 F.2d 425,

9   428-29 (9t Cir. 1992); <u>Stephens v. Borg</u>, 59 F.3d 932, 935-36 (9th Cir.

10  1995).

11      In addition, Petitioner fails to demonstrate how his defense would

12  have differed had the information been amended earlier.  First, the

13  State's failure to amend the information until after the jury began to

14  deliberate could not have affected Petitioner's decision to enter into

15  a plea agreement because, as the California Court of Appeal emphasized,

16  the State neither attempted to negotiate with nor offered any plea

17  agreement to Petitioner at any time.  <u>Id.</u> at 480 (prosecution explaining

18  that "from the beginning, no attempts or offers of plea bargaining would

19  be made and they have not been made"); <u>see</u> <u>also</u> Answer Ex. A at 19.

20  Perhaps more importantly, the record—from the preliminary hearing,

21  throughout trial, and during sentencing—is rife with Petitioner's

22  assertions of innocence and requests to present his alleged alibi

23  witnesses.  RT, Lodgment 3, Volume dated April 3, 2001 at 111; <u>id.</u>,

24  Volume dated July 10, 2001 at 4-5; <u>id.</u>, Volume dated July 26, 2001 at

25  4, 22, 26; <u>id.</u>, Volume dated October 26, 2001 at 23-24, 31-32, 39-40;

26  <u>id.</u>, Volume dated November 2 and 5, 2001 at 99, 106, 114, 127-28, 148-

27  49, 156, 174, 191-92; <u>id.</u>, Volume dated November 6, 2001 at 196, 210-16,

28  226-29, 273-83, 286-89, 298-301, 307-10, 338-52; <u>id.</u>, Volume dated

November 7, 2001 at 394-95, 402-04, 441; <u>id.</u>, Volume dated November 8-9, 2001 at 487, 516-17; <u>id.</u>, Volume dated February 26, 2002 at 9-11. As such, the record undermines Petitioner's claim that any earlier notice of the prior conviction would have influenced his plea bargaining decisions in any way, or would have caused him to seek a plea agreement at all. Second, Petitioner presents no evidence to support his claim that his refusal to submit to a psychological examination, and therefore his intention to pursue a mental defense, was in any way prompted by sentencing considerations. Again, any such claim by Petitioner is refuted by his countless claims of innocence and repeated requests that his alibi witnesses be called to testify, <u>see</u> <u>id.</u>, as well as his statements during sentencing that he refused to submit to a psychological exam because he did not suffer from any kind of mental defect. <u>Id.</u>, Volume dated February 28, 2002 at 5, 8. Moreover, this Court is unconvinced by Petitioner's allegations that had defense counsel known of the prior strike earlier, counsel would have sought to persuade Petitioner to submit to a psychological examination with more vigor. Answer Ex. A at 19. As the appellate court noted, prior to the information's amendment, Petitioner faced a prison sentence for serious felony offenses, which, regardless of counsel's knowledge of the enhancement allegation, compelled counsel's use of the most influential arguments. <u>Id.</u> at 19-20. In any event, even assuming defense counsel had more strenuously argued in favor of a mental defense, Petitioner's adamant denials of any incapacity and his repeated claims of innocence strongly suggest that counsel's efforts would have been futile. <u>Id.</u> at 20. As a result, the record undermines Petitioner's claims that the timing of the amendment, however late in trial proceedings, denied him the opportunity to present an appropriate defense.

In conclusion, this Court finds that the timing of the amendment denied Petitioner of neither adequate notice of the prior serious felony conviction nor the opportunity to present a defense, and as such, did not "so infuse the trial with unfairness as to deny [Petitioner] due process of law." McGuire, 502 U.S. at 75.  This Court therefore finds that the California Court of Appeal's decision upholding the trial court's amendment of the information was not contrary to or an unreasonable application of clearly established federal law.  See Williams, 529 U.S. at 412-13.  For these reasons, this Court **RECOMMENDS** that Petitioner's third ground for habeas relief be **DENIED**.

D.   **Ineffective Assistance Of Counsel And Conflict Of Interest**

1.   **Failure To Call Alibi Witnesses**

In his fourth claim for habeas relief, Petitioner first contends that his defense attorney's failure to call certain alibi witnesses deprived him of effective assistance of counsel.  Petition at 9. Petitioner complains that although he provided his attorney with a list of twelve alibi witnesses, only four such witnesses were allowed to testify on his behalf.  Id.; see also Lodgments 13-14, Ex. E at 1-2 (attaching list of proposed witnesses to be called by Petitioner at trial).  Petitioner takes particular issue with his attorney's failure to call Arnold and Elvia Fleming, both of whom Petitioner contends were ready and willing to provide testimony confirming his innocence.[9] Petition at 9.   Specifically, Petitioner argues that the Flemings'

---

[9] According to Petitioner, his defense counsel originally told the Flemings that they would testify at trial.  Petition at 9.  Sometime later, however, counsel allegedly informed them that their testimony would no longer be needed.  Id. Petitioner represents that the Flemings nonetheless appeared in court to provide testimony on Petitioner's behalf, but that counsel never called them as witnesses.  Id.

testimony would have rebutted statements made by prosecution witness Officer Shannon Fox regarding the location of the incident and the site of Petitioner's arrest, and therefore claims his attorney's refusal to present such testimony constituted ineffective assistance.[10]  Id.

Respondent maintains that this ineffective assistance of counsel claim fails due to lack of factual support.  Answer at 15.  Respondent argues that Petitioner's allegations regarding his alleged alibi witnesses are nothing more than mere speculation, emphasizing that the record lends little support to such claims and that Petitioner failed to provide exhibits or witness affidavits to explain the subject matter of these witnesses' testimony.  Id. at 15-16.  Finally, Respondent insists that such unsupported and conclusory allegations of ineffective assistance of counsel do not justify the relief Petitioner seeks, and must be dismissed in their entirety.  Id.

The California Court of Appeal, the last state court to issue a brief but reasoned decision on this claim, rejected Petitioner's

---

[10]  In both his Petition and throughout the trial transcript, Petitioner's allegations with regard to his purported alibi witnesses, and, more specifically, the substance of the Flemings' testimony, is not at all clear.  At trial, Petitioner denied ever having gone to the incident site on the evening of March 18, 2001 and insisted that he was arrested at the home of Hermano Ramos, and not the doughnut shop in question.  See RT, Lodgment 3, Volume dated November 6, 2001 at 244-45, 280, 339. Still, Petitioner never alleges that he was with either the Flemings or any other alleged alibi witnesses at the time of the incident, rather, he seems only to suggest that he was not arrested at the doughnut shop and that multiple people—who he could not identify by name—witnessed his arrest at that location.  Id. at 271-75.  Thus, even assuming the Flemings would have provided testimony corroborating Petitioner's characterization of events, such testimony could serve to undermine the credibility of Officer Fox, but would not provide Petitioner with an alibi.  Accordingly, and for the reasons set forth more fully below, counsel's failure to call the Flemings as potential alibi witnesses does not rise to the level of ineffective assistance.

28                      05cv2389-LAB (BLM)

arguments on habeas review.  <u>Id.</u> Ex. B at 1.   Addressing the alibi witnesses issue, the appellate court explained:

> Petitioner claims that the witnesses' testimony would have clarified where he was arrested.   Petitioner does not establish how this purported testimony would have helped his defense.  Moreover, he does not provide declarations from the witnesses as to what they would have testified.

<u>Id.</u>   For these reasons, the appellate court denied Petitioner his requested habeas relief.  <u>Id.</u> Ex. B at 2.

The Sixth Amendment guarantees not only assistance, but effective assistance of counsel.  <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984).   The purpose of the right is to ensure a fair trial, and the benchmark for judging any claim of ineffectiveness is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." <u>Id.</u>   To prevail on an ineffective assistance of counsel claim, a habeas petitioner must show that (1) counsel's performance was deficient, specifically, that counsel's "representation fell below an objective standard of reasonableness" under prevailing professional norms, <u>see</u> <u>id.</u> at 687-88, and (2) that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different.  <u>Id.</u> at 691-94.   The relevant inquiry under <u>Strickland</u> is not what defense counsel could have done, but rather whether counsel's choices were reasonable.  <u>See</u> <u>Babbitt v. Calderon</u>, 151 F.3d 1170, 1173 (9th Cir. 1998).

The Ninth Circuit has found violations of the Sixth Amendment's guarantee to effective assistance of counsel based on counsel's failure either to investigate or to present testimony from an available witness where such testimony corroborates the defendant's testimony.  <u>See</u>, <u>e.g.</u>, <u>Luna v. Cambra</u>, 306 F.3d 954, 961-67 (9th Cir. 2002) (finding deficient

29

performance and prejudice where counsel failed to investigate and present testimony of corroborating alibi witnesses where defendant's only defense was his own testimony that he was home asleep at the time of the crime); Lord v. Wood, 184 F.3d 1083, 1093-96 (9th Cir. 1999) (finding deficient performance where counsel failed to interview personally and put on the stand three possible alibi witnesses who would have testified that they saw the victim alive the day after she was purportedly murdered); Brown v. Myers, 137 F.3d 1154, 1157 (9th Cir. 1998) (finding failure to investigate and present alibi witnesses to be deficient performance and prejudicial where, without corroborating witnesses, defendant's defense rested only on his own bare testimony).

Petitioner's ineffective assistance of counsel claim lacks merit because he fails to provide any evidence of prejudice resulting from his defense attorney's alleged error.  See Young v. Runnels, 435 F.3d 1038, 1043 (9th Cir. 2006) (citing Strickland, 466 U.S. at 697) (explaining that courts may consider either prong of the Strickland test first, and need not address both prongs if the defendant fails under one).  Although Petitioner represents that the Flemings would have offered testimony regarding the true location of the incident and the actual site of his arrest—testimony that Petitioner argues would have contradicted in court statements made by arresting officer Shannon Fox—he does not explain how such purported testimony would have supported his defense.  See Shah v. United States, 878 F.2d 1156, 1161 (9th Cir. 1989) (noting that conclusory allegations of prejudice are insufficient to show ineffective assistance).  For example, Petitioner does not allege that the Flemings would have testified that he could not have committed the charged crimes because he was with them when the crimes allegedly were committed (or for any other reason).  Indeed,

other than those cursory representations, Petitioner makes no effort to clarify how the Flemings' purported testimony would have been favorable to him, or how it would have served to exonerate him of the criminal threats, child molestation, and obstructing or resisting an executive officer charges he faced.  See McKenna v. McDaniel, 65 F.3d 1483, 1494 (9th Cir. 1995) (holding that the failure to present alibi witnesses did not constitute ineffective assistance of counsel when their testimony would not have affected the verdict).  Moreover, as Respondent correctly highlights, Petitioner fails to provide supporting declarations or affidavits from any alleged alibi witness detailing the subject matter of their purported testimony so it is pure speculation as to what the Flemings or any other alleged alibi witnesses would have stated.  See Dows v. Wood, 211 F.3d 480, 486 (9th Cir. 2000) (no showing of ineffective assistance where petitioner failed to present witness affidavit to establish that witness would have presented helpful testimony).  Absent any such reliable evidence by Petitioner, this Court finds there exists no reasonable probability that, but for counsel's failure to call the alleged alibi witnesses, the jury would have returned a different verdict.  See Strickland, 466 U.S. at 694.

This Court also finds that the allegations Petitioner includes in his Petition are insufficient to demonstrate that counsel's performance was deficient.  Id. at 687-89.  For example, this Court's review of the record reveals that defense counsel presented testimony from five different witnesses in support of Petitioner's defense.  See RT, Lodgment 3, Volume dated November 2 and 5, 2001 at 170-76, 181-91; id., Volume dated November 6, 2001 at 199-366; id., Volume dated November 7, 2001 at 398-405.  Defense witnesses Valdez, German, and Howard responded to questioning related to Petitioner's alleged history of sexual abuse

of minor children, presumably in an attempt to prove that the prior molestations never occurred and to undermine the prosecution's efforts to establish Petitioner's propensity to commit the present molestation offense. Id., Volume dated November 2 and 5, 2001 at 170-76; id., Volume dated November 6, 2001 at 199-201, 353-55, 362-65. Defense witness Rivera provided testimony to support Petitioner's claims that he never threatened Officer Fox. Id., Volume dated November 2 and 5, 2001 at 181-91. Moreover, counsel guided Petitioner through his own testimony, during which Petitioner provided a rambling explanation of his innocence. Id. at 203-352; id., Volume dated November 7, 2001 at 398-405. Petitioner testified that he spent the day drinking, walking around, and attempting to talk to a religious advisor. Id. Petitioner denied having gone to the incident site on the evening in question, claimed he was arrested not at the incident site but at the home of a third party, insisted he was physically incapable of molesting any child due to prolonged use of various medications that rendered him impotent, and denied having made threats of any kind to his arresting police officer. Id. Although Petitioner describes several people who allegedly were present when he was arrested at the residence, Petitioner does not identify the Flemings. Id. As such, it is unclear how the Flemings' testimony would have supported Petitioner's defense. Compare Luna, 306 F.3d at 961-67; Lord, 184 F.3d at 1093-96. Thus, although defense counsel exhibited a preference to pursue a mental defense,[11] see id., Volume dated November 6, 2001 at 193-97, the record confirms that

---

[11] In addition, defense counsel repeatedly advised both Petitioner and the trial court that he did not support Petitioner's decision to testify at trial. RT, Lodgment 3, Volume dated November 2 and 5, 2001 at 179-80; id., Volume dated November 6, 2001 at 196-97.

counsel presented testimony at trial that supported Petitioner's chosen defense. As a result, defense counsel's strategic decision not to call the Flemings, or any other alleged alibi witness who would have provided testimony similar to that described in the Petition, cannot be characterized as falling below reasonable professional assistance. See Strickland, 466 U.S. at 688-89.

For the foregoing reasons, this Court finds no basis for concluding that defense counsel's performance fell below an objectively reasonable level or prejudiced Petitioner's defense. Id. at 687-88. Accordingly, this Court finds that the California Court of Appeal's decision denying Petitioner's ineffective assistance of counsel claim was not contrary to or an unreasonable application of clearly established federal law. See Williams, 529 U.S. at 412-13.

### 2.   Conflict Of Interest Claims

Second, Petitioner argues that he received ineffective assistance of counsel because his "attorney suffered from a conflict of interest." Petition at 9. Petitioner complains that he was forced to proceed to trial represented by an attorney with whom he was dissatisfied, and with whom he refused to communicate or cooperate. Id. Petitioner also contends that this complete inability to communicate with his appointed attorney was a conflict of interest sufficient to justify the substitution of new counsel, and that the trial court's denial of his request for new counsel constituted an abuse of discretion. Id.

Respondent counters that Petitioner fails to explain his conflict of interest claim in sufficient detail. Answer at 16. Respondent characterizes Petitioner's reference to a conflict of interest as "a bare conclusion, unsupported by allegations of underlying fact," and as such, argues that the claim should be dismissed. Id. (citation

omitted).

As with the claim regarding counsel's failure to call alleged alibi witnesses, the California Court of Appeal rejected Petitioner's conflict of interest allegations:

> [Petitioner] also makes no showing counsel suffered from a conflict of interest.  To the extent he is arguing the court erred in not granting his *People v. Marsden* (1970) 2 Cal.3d 118 motion, issues that could have been, but were not, raised on appeal are not cognizable on habeas corpus absent special circumstances warranting departure from the rule.  (*In re Clark* (1993) 5 Cal.4th 750, 765.)  No special circumstances warranting departure from the rule are presented in the petition.  Moreover, the record submitted does not demonstrate any error in denying the motion.  Rather, it demonstrates a defendant refusing to cooperate with counsel in order to manipulate the court into appointing different counsel.

Id. Ex. B at 1.

As presented, Petitioner's conflict of interest claim is somewhat ambiguous in that it appears to be based on two separate but related theories: that his defense counsel provided ineffective assistance and that the trial court's refusal to appoint substitute counsel violated his Sixth Amendment right to counsel.  For the reasons set forth more fully below, this Court finds that Petitioner's conflict of interest claim does not merit habeas relief under either theory.

### a.   Denial Of Effective Assistance

Within the Sixth Amendment's right to effective assistance of counsel exists a correlative right to representation unhindered by any conflict of interest.  See Wood v. Georgia, 450 U.S. 261, 271-72 (1981); Cuyler v. Sullivan, 446 U.S. 335, 346-48 (1980).  In order to establish an ineffective assistance of counsel claim based on a conflict of interest, a habeas petitioner must show that an actual conflict of interest adversely affected his attorney's performance.  See Mickens v. Taylor, 535 U.S. 162, 174 (2002); Sullivan, 446 U.S. at 348-50.  An

34                                      05cv2389-LAB (BLM)

"actual conflict of interest" only occurs when counsel "actively represented conflicting interests." Strickland, 446 U.S. at 450. Without this factual showing of inconsistent interests, an alleged conflict is merely possible or speculative, and is therefore "insufficient to impugn a criminal conviction." Sullivan, 446 U.S. at 350.

Unlike ineffective assistance claims based on counsel's incompetence, conflict of interest-based ineffective assistance claims require no showing of prejudice in order for a habeas petitioner to obtain relief. Id. at 349-50; see also Delgado v. Lewis, 223 F.3d 976, 981 (9th Cir. 2000). Nonetheless, a petitioner "must demonstrate that his attorney made a choice between possible alternative courses of action that impermissibly favored an interest in competition with those of the [petitioner]." McClure v. Thompson, 323 F.3d 1233, 1248 (9th Cir. 2003); see also Lockhart v. Terhune, 250 F.3d 1223, 1231 (9th Cir. 2001) (petitioner must establish that "the attorney's behavior seems to have been influenced" by the conflict of interest). In other words, the adverse effect caused by the alleged conflict "must be one that significantly worsens counsel's representation of the client before the court or in negotiations with the government." United States v. Mett, 65 F.3d 1531, 1535 (9th Cir. 1995). In contrast, a conflict which causes problems in some facet of the attorney-client relationship, but which ultimately has no significant impact on counsel's representation, does not cause the requisite adverse effect. Id. at 1535-36. Accordingly, not every conflict or disagreement between the defendant and counsel implicates Sixth Amendment rights. See Wheat v. United States, 486 U.S. 153, 159 (1988) (noting that the "essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each

criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers"); <u>Morris v. Slappy</u>, 461 U.S. 1, 13-14 (1983) (explaining that the Sixth Amendment requires competent representation, but does not guarantee a "meaningful relationship" between a defendant and his counsel).

Petitioner fails to identify any specific conflict of interest from which his primary trial counsel, Donald Scoville, suffered. Petitioner does not claim Scoville's efforts on his behalf were threatened in any way by Scoville's responsibilities to another client or other third person. Petitioner does not claim Scoville's own interests somehow impaired the manner in which he conducted Petitioner's defense, or his representation of Petitioner in general. Moreover, the record does not reflect any actual conflict between Petitioner and Scoville, rather, it reveals that counsel advocated for Petitioner and thoroughly assisted in his defense. <u>See United States v. Cronic</u>, 466 U.S. 648, 656 (1984) (underlining the Sixth Amendment's requirement that an "accused have 'counsel acting in the role of an advocate'"); <u>Plumlee v. Sue del Papa</u>, 426 F.3d 1095, 1105-06 (9th Cir. 2005) (explaining that in evaluating conflict, courts should consider whether counsel was an advocate for the accused and whether he provided actual assistance to the accused's defense). Absent any specific facts supporting Petitioner's conflict of interest claims, this Court agrees with Respondent that Petitioner's allegations are merely conclusory and simply exhibit Petitioner's general dissatisfaction with his defense attorney. <u>See Sullivan</u>, 446 U.S. at 350; <u>James</u>, 24 F.3d at 26 (noting that "conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief"). As such, this Court finds that Petitioner's allegations cannot form the basis for habeas relief.

## b. __Denial Of Petitioner's Request For New Counsel__

As noted above, Petitioner maintains that his complete inability to communicate and cooperate with his appointed counsel created a conflict of interest sufficient to warrant the substitution of new counsel. Petition at 9. Petitioner therefore asserts that the trial court's July 26, 2001 denial of his request for new counsel constituted an abuse of discretion, and violated his Sixth Amendment right to counsel. __Id.__ Again, the California Court of Appeal rejected Petitioner's __Marsden__ argument, noting that "issues that could have been, but were not, raised on appeal are not cognizable on habeas corpus absent special circumstances warranting departure from the rule."[12] Answer Ex. B at 1.

The Sixth Amendment grants criminal defendants who can afford to retain counsel a qualified right to hire counsel of their choice. __See Wheat__, 486 U.S. at 159. A criminal defendant who cannot afford to retain counsel has no right to counsel of his own choosing. __Id.__ Nor is he entitled to an attorney whom he likes and with whom he feels

---

[12]  To the extent Petitioner claims that the trial court improperly denied his request for substitute counsel, this Court notes that this claim could be procedurally barred. Indeed, the appellate court cited a specific California procedural rule in rejecting this claim, a rule that undeniably gives rise to a potential procedural bar on federal habeas. Answer Ex. B at 1. Respondent, however, fails to plead any such affirmative defense in his Answer, __see__ __Bennett v. Mueller__, 322 F.3d 573, 586 (9th Cir. 2002) (procedural default is an affirmative defense which must be plead and proven by the government), and in fact, fails to address this aspect of Petitioner's conflict of interest claim at all. This Court therefore declines to raise and/or evaluate any such affirmative defense on Respondent's behalf. In light of Respondent's failure to raise this affirmative defense, and because Petitioner's conflict of interest claim should be construed to assert a violation of his Sixth Amendment right to counsel, this Court will assess this conflict of interest theory on the merits.

comfortable.   The Sixth Amendment guarantees effective assistance of counsel, not a "meaningful relationship" between an accused and his counsel.  See Slappy, 461 U.S. at 14.

In California, People v. Marsden, 2 Cal. 3d 118 (1970) requires the trial court to permit a criminal defendant requesting substitution of counsel to specify the reasons for his request and to hold a hearing. See Marsden, 2 Cal. 3d at 123-24.  The denial of a motion to substitute counsel implicates a defendant's Sixth Amendment right to counsel and is properly considered in federal habeas.  See Schell v. Witek, 218 F.3d 1017, 1024-25 (9th Cir. 2000).  In reviewing the state courts' rejection of such a Sixth Amendment claim, the "ultimate constitutional question" on federal habeas review is whether the state trial court's denial of the Marsden motion

> actually violated [Petitioner's] constitutional rights in that the conflict between [the defendant] and his attorney had become so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment.

Schell, 218 F.3d at 1026.

In this case, from the April 3, 2001 preliminary examination to the trial's conclusion, Petitioner was represented by at least four different attorneys.  See RT, Lodgment 3, Volume dated April 3, 2001 at 3 (Petitioner represented by Timothy Reilly); id., Volume dated July 10, 2001 at 3 (Petitioner represented by James A. Johnson), and at 14 (trial court noting that Petitioner fired retained counsel, Mr. Bacho); id., Volume dated July 26, 2001 at 2, 4 (Petitioner represented by Donald Scoville); id., Volume dated November 2 and 5, 2001 at 85 (confirming that Petitioner had a total of four different attorneys since the case's inception).   On July 10, 2001, Petitioner made an oral motion to

represent himself, which the trial court granted.  Id., Volume dated July 10, 2001 at 13.  By July 26, 2001, however, Petitioner was again represented by counsel, namely, Donald Scoville.  Id., Volume dated July 26, 2001 at 4.  On that same day, Petitioner voiced his dissatisfaction with Scoville, requesting substitute counsel pursuant to Marsden:

> THE DEFENDANT:  Your Honor, I got my lawyer.  I got proof here there is a lady here who can prove that I got letters here for you that two witnesses had information but the investigator and my lawyer went in the visiting room, they were there, my two witnesses, they came back to me and said that they don't know nothing.  But then the witness said, "No, he's lying.  They are lying to you.  We want to go to court."  Here is an example of what we want to say.
>
> MR. SCOVILLE:  Your Honor, may I suggest -- I'm not trying to stop him from talking.  I would suggest that this be done in the form of a Marsden hearing if that is what he wishes, in privacy.
>
> THE COURT:  Mr. Licon, what your attorney is pointing out, if you do things in open court, you are saying things which could possibly be used against you.
>
> THE DEFENDANT:  Okay.  Okay.
>
> THE COURT:  That could create a problem for you, Mr. Licon.
>
> THE DEFENDANT:  If you want that in private, okay.
>
> THE COURT:  Mr. Licon, I wasn't actually suggesting it be done anytime.  The question of whether or not it would be appropriate for you to talk to me about that is one that would be discussed between you and your attorney.
>
> We're here for pretrial.  I understand that there is not a disposition at this time.
>
> MR. SCOVILLE:  Right.
>
> THE COURT:  Donald Scoville is appearing on behalf of Mr. Licon.
>
> THE DEFENDANT:  I don't want him anymore.  He lied to me.  He's going to lie.  I'm afraid he's going to lie to me, hiding more information.  Here is the proof if you want to read it.
>
> THE COURT:  Mr. Licon, you said, "I don't want him anymore."

1          THE DEFENDANT: Because he lied to me.

2          THE COURT:  And, Mr. Licon, what are you requesting?

3          THE DEFENDANT:  I want a real lawyer.  They are all
real.  I mean, I want a lawyer who can explain to me the
4     things and comply without lying to me.  If I let this go --

5          THE COURT:  Mr. Licon, there is a procedure called a
"<u>Marsden</u> hearing" in which you come in to chambers and we
6     talk about the matter outside the presence of the general
public and other counsel.  We're going to recess at this time
7     to have a brief <u>Marsden</u> hearing.

8     RT, Lodgment 3, Volume dated July 26, 2001 at 4-6.

9          Following the <u>Marsden</u> hearing,[13] the Court denied the request for

10    substitute counsel over Petitioner's objections.   <u>Id.</u> at 21-24.   In

11    denying the request, the trial court explained that Petitioner had

12    failed to present good cause for another appointed attorney.  <u>Id.</u> at 21-

13    22.   Nevertheless, Petitioner insisted that the ruling violated his

14    constitutional rights.  <u>Id.</u> at 21-24.  Petitioner also represented that

15    he planned to refuse to cooperate with Scoville, and repeatedly

16    instructed Scoville not to represent him.  <u>Id.</u> (multiple statements by

17    Petitioner directing Scoville to "get off [his] case").  Ultimately,

18    Scoville represented Petitioner throughout trial and during sentencing.

19    <u>See</u> <u>generally</u> <u>id.</u>, Volumes dated July 26, 2001 through February 26,

20    2002.

21          To the extent Petitioner claims that the trial court improperly

22    denied his request for substitute counsel in violation of his Sixth

23    Amendment rights, he is mistaken.  On July 26, 2001, Petitioner moved

24    for substitution of counsel and, in accord with the dictates of the

25    Sixth Amendment, the trial court inquired into Petitioner's concerns.

26    _____

27         [13]  The <u>Marsden</u> hearing was held in chambers.  RT, Lodgment 3, Volume dated July
28    26, 2001 at 6.  The record of the trial court's discussions with Petitioner during that
<u>Marsden</u> hearing, however, was sealed.  <u>Id.</u>

See Hudson v. Rushen, 686 F.2d 826, 831 (9th Cir. 1982) (finding that state court conducted adequate hearing when it invited defendant to make a statement and listened to defendant's reasons for wanting new counsel). The trial court considered Petitioner's allegations that Scoville was purposefully withholding evidence favorable to his defense, was lying to him, and was unwilling to defend him "to the fullest," and determined that there was no legal basis to justify substitution on the evidence presented. RT, Lodgment 3, Volume dated July 26, 2001 at 21-24. Given Petitioner's practice of voicing his dissatisfaction with appointed attorneys, and without evidence supporting Petitioner's allegations, the trial court reasonably concluded that Petitioner's complaints exhibited a general dissatisfaction with Scoville, not evidence of an irreconcilable conflict between attorney and client. Id.

In addition, Petitioner's repeated refusals to cooperate with counsel—possibly to coerce the trial court into appointing a new attorney—suggests that Petitioner's frustration with Scoville's exercise of his professional obligations would continue with any other attorney, and therefore did not warrant a new appointment. Even assuming the trial court had appointed new counsel, the record suggests that the appointment would not have alleviated Petitioner's concerns, which were likely more a product of his predicament as a criminal defendant rather than counsel's conduct. In other words, the alleged conflict was of Petitioner's own making, see Plumlee, 426 F.3d at 1106 (defendant not entitled to new counsel when conflict is of defendant's own making or defendant's allegations are objectively unreasonable), and seemingly arose over decisions that are committed to the judgment of the attorney and not the client. See Brookhart v. Janis, 384 U.S. 1, 8 (1966) (noting that an attorney "may properly make a tactical determination of

41                                    05cv2389-LAB (BLM)

how to run a trial even in the face of his client's incomprehension or even explicit disapproval"). Considering that the "purpose of providing assistance of counsel 'is simply to ensure that criminal defendants receive a fair trial,'" see Wheat, 486 U.S. at 159, this Court discerns no evidence that this purpose went unfulfilled here, or that a Sixth Amendment violation occurred in this case.

In conclusion, this Court finds that counsel's failure to call the alleged alibi witnesses did not amount to ineffective assistance of counsel. This Court also finds that Petitioner's failure to identify any specific facts in support of his conflict of interest claim precludes this Court's recommendation of habeas relief on ineffective assistance grounds. Finally, this Court finds that the trial court's denial of Petitioner's request for substitute counsel was in accordance with the Sixth Amendment. As such, this Court concludes that the California Court of Appeal's decision was neither contrary to nor an unreasonable application of clearly established law. See Williams, 529 U.S. at 412-13. Accordingly, this Court **RECOMMENDS** that Petitioner's fourth claim for habeas relief be **DENIED**.

**E.   Petitioner's Right To Self-Representation**

In his final claim for habeas relief, Petitioner argues that the trial court improperly denied his pretrial and trial requests to represent himself. Petition at 10. Petitioner reiterates that his requests were prompted by his lack of confidence in defense counsel Scoville's abilities, and insists that the trial court's rulings placed him in "the untenable position of being represented by an attorney he no longer trusted."[14]   Id.   Petitioner claims that the trial court's

---

[14]   Petitioner also notes that even Scoville requested to withdraw from Petitioner's case because he did not believe he could represent Petitioner effectively.

1  denials were an abuse of discretion and prejudiced his defense.   Id.

2      Respondent contends that this claim is procedurally barred due to

3  Petitioner's failure to present it to the California courts on direct

4  appeal.  Answer at 16-19.  In the alternative, Respondent argues that

5  this claim must be denied because Petitioner has failed to demonstrate

6  that the state courts' decisions were contrary to, or involved an

7  unreasonable application of, clearly established federal law, or that

8  the decisions were based on an unreasonable determination of the facts

9  presented.  Id. at 19-21.

10     On habeas review, the California Supreme Court denied Petitioner's

11  petition with respect to this issue without explanation or citation of

12  authority.  Lodgment 15.  Thus, this Court must look through to the last

13  reasoned state court decision.  See Ylst, 501 U.S. at 803 (presuming

14  that "where there has been one reasoned state judgment rejecting a

15  federal claim, later unexplained orders upholding that judgment or

16  rejecting the same claim rest upon the same ground").  The last reasoned

17  state court decision on this issue came from the California Court of

18  Appeal.  Answer Ex. B at 2.  In rejecting Petitioner's self-

19  representation claim, the appellate court explained:

20          Petitioner also contends his constitutional right to
21      self-representation was violated when the court denied pre-
        trial and during trial requests to represent himself.  The
22      submitted reporter's transcripts indicate petitioner was
        represented by four different counsel.  He fired retained
23      counsel and had an appointed counsel relieved at his request.
        At one point, a request to represent himself was granted and
24      petitioner acted in propria persona in at least some pre-
        trial proceedings.  In some manner that is unclear, he
25      obtained one or two additional counsel.  He attempted to have
        yet another counsel removed leading to the *Marsden* hearing
26      discussed above.  During the course of that hearing
        petitioner several times demanded that another new counsel be
27      appointed and occasionally made reference to representing

28

─────────────────────

Petition at 10.

himself.   However, it is unclear whether these references were simply a tactic to further his request for appointment of new counsel or whether they were actually a request to represent himself.   After denial of the *Marsden* motion, petitioner did not file a motion to represent himself. During the jury trial petitioner demanded that he be allowed to represent himself.   The court correctly denied that request as untimely.   <u>This issue could have been raised on appeal and it is not cognizable on a petition for writ of habeas corpus.</u>   Were we to reach the merits, moreover, we would deny the petition under the circumstances presented.

Answer Ex. B at 2 (emphasis added).

### 1.   **Procedural Default**

The procedural default rule is based on the principle that federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." <u>Coleman v. Thompson</u>, 501 U.S. 722, 729 (1991).   "For the procedural default rule to apply, however, the application of the state procedural rule must provide 'an adequate and independent state law basis' on which the state court can deny relief." <u>Park v. California</u>, 202 F.3d 1146, 1151 (9th Cir. 2000) (quoting <u>Coleman</u>, 501 U.S. at 729-30).   If the federal court finds an independent and adequate state procedural ground, "federal habeas review is barred unless the prisoner can demonstrate cause for the procedural default and actual prejudice, or demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice." <u>Noltie v. Peterson</u>, 9 F.3d 802, 804-05 (9th Cir. 1993); <u>Coleman</u>, 501 U.S. at 750.

Procedural default is an affirmative defense which must be plead and proven by the government.   <u>See</u> <u>Bennett v. Mueller</u>, 322 F.3d 573, 586 (9th Cir. 2002) (noting that "because it is the State who seeks dismissal based on the procedural bar, it is the State who must bear the burden of demonstrating that the bar is applicable-in this case that the

state procedural rule has been regularly and consistently applied in habeas actions"). In response, the burden shifts to the habeas petitioner to place that defense in issue by alleging facts that demonstrate the inadequacy of the state procedure. <u>Id.</u> The ultimate burden of proof, however, is on the government. <u>Id.</u>

Respondent argues that the California Court of Appeal imposed a procedural bar when it tacitly referenced the rule set forth in <u>Ex parte Dixon</u>, 41 Cal. 2d 756 (Cal. 1953) in its denial of Petitioner's self-representation claim. Answer at 17-18. The <u>Dixon</u> bar prohibits the use of habeas corpus as a substitute for the appeal process, and explains that "in the absence of special circumstances constituting an excuse for failure to employ that remedy, the writ will not lie where the claimed errors could have been, but were not, raised upon a timely appeal from a judgment of conviction." <u>Dixon</u>, 41 Cal. 2d at 759.

As an initial matter, it is worth noting that at no point in its decision did the California Court of Appeal expressly cite to <u>Dixon</u>. Answer Ex. B at 1-2. Instead, the appellate court rejected Petitioner's claim using language conveying the substance of the <u>Dixon</u> rule. <u>Id.</u> at 2 (summarizing that because the self-representation "issue could have been raised on appeal . . . it is not cognizable on a petition for writ of habeas corpus"). Similarly, in analyzing Petitioner's <u>Marsden</u>-related conflict of interest claim, the appellate court noted that "issues that could have been, but were not, raised on appeal are not cognizable on habeas corpus absent special circumstances warranting departure from the rule," but only cited to <u>In re Clark</u>, 5 Cal. 4th 750, 765 (Cal. 1993). Answer Ex. B at 1. Nevertheless, the appellate court's <u>Clark</u> citation directly refers to <u>Dixon</u> in support of this procedural principle. <u>See Clark</u>, 5 Cal. 4th at 765. Accordingly, this

Court accepts Respondent's argument that the California Court of Appeal predicated its denial of Petitioner's self-representation claim on the Dixon bar.  Answer Ex. B at 2.

In this case, Petitioner was well aware of his right to self-representation, as exhibited by his repeated references to that right and his multiple motions to represent himself.  See RT, Lodgment 3, Volume dated July 10, 2001 at 4-5; id., Volume dated July 26, 2001 at 21-22; id., Volume dated October 26, 2001 at 27; id., Volume dated November 2 and 5, 2001 at 87.  Moreover, Petitioner pursued numerous claims on direct appeal, but elected not to allege any violation of his right to self-representation.  See Lodgments 5, 7-8.  Because the Dixon bar prohibits Petitioner from raising a claim on habeas review that was available but not raised on direct review, Dixon equally bars Petitioner from raising this claim in federal court.  As a result, this Court finds that Petitioner defaulted on his Sixth Amendment self-representation claim.

### a.    Independence And Adequacy Of The Dixon Bar

Respondent argues that the Dixon bar is an adequate and independent state ground to bar federal review.  Answer at 17-18.  "For a state procedural rule to be 'independent,' the state law basis for the decision must not be interwoven with federal law."  La Crosse v. Kernan, 244 F.3d 702, 704 (9th Cir. 2001) (citing Michigan v. Long, 463 U.S. 1032, 1040-41 (1983)).  "A state law ground is so interwoven if 'the state has made application of the procedural bar depend on an antecedent ruling on federal law [such as] the determination of whether federal constitutional error has been committed.'"  Park, 202 F.3d at 1152 (quoting Ake v. Oklahoma, 470 U.S. 68, 75 (1985)).

In Bennett, the Ninth Circuit held that the Dixon bar was not

1  interwoven with federal law, and as such, is independent.  <u>See</u> <u>Bennett</u>,
2  322 F.3d at 582-83.  Moreover, the Court previously has found the <u>Dixon</u>
3  bar to be adequate.  <u>See</u> <u>Protsman v. Pliler</u>, 318 F. Supp. 2d 1004, 1014
4  (S.D. Cal. 2004) (Whelan, J.).  Because Respondent has plead that the
5  state court imposed an adequate and independent state procedural bar to
6  deny Petitioner's self-representation claim, this Court may not review
7  the claim unless Petitioner demonstrates that the <u>Dixon</u> bar is not an
8  adequate and independent state ground, or that this Court may somehow
9  excuse his default.  <u>See</u> <u>Wells v. Maas</u>, 28 F.3d 1005, 1008 (9th Cir.
10 1994).

11     In his Petition, Petitioner fails to challenge the adequacy of the
12 <u>Dixon</u> bar.  He does not argue that the <u>Dixon</u> bar is inconsistently
13 applied, and does not supply any facts or legal authority to support
14 such an argument.  Similarly, Petitioner fails to (1) claim that the
15 <u>Dixon</u> bar is not independent of federal law, (2) identify facts
16 supporting such an argument, or (3) cite any authority finding that the
17 <u>Dixon</u> bar is somehow interwoven with federal law.  In fact, Petitioner
18 cites no case law of any kind to support his self-representation claim,
19 and unfortunately failed to file a Traverse addressing Respondent's
20 procedural bar argument.  Petitioner has therefore failed to carry his
21 burden of demonstrating that his self-representation claim is not
22 procedurally barred by <u>Dixon</u>.  Moreover, both this Court's review of the
23 record and the relevant authorities fail to support any such argument.
24 <u>See</u> <u>Protsman</u>, 318 F. Supp. 2d at 1008, 1014 (finding <u>Dixon</u> bar
25 independent and adequate).  Accordingly, this Court finds that the <u>Dixon</u>
26 bar is adequate and independent, that Petitioner procedurally defaulted
27 his self-representation claim when he failed to raise it on direct
28 appeal, and that absent some legal excuse, such procedural default bars

this Court from reviewing the merits of this final claim for habeas relief.

### b.   Cause And Prejudice Or Actual Innocence

In light of Petitioner's procedural default, this Court may only reach the merits of the self-representation claim if Petitioner can demonstrate either cause and prejudice, or actual innocence. See Wells, 28 F.3d at 1009. "'Cause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him . . . ." Coleman, 501 U.S. at 753 (emphasis in original); see also McCleskey v. Zant, 499 U.S. 467, 497 (explaining that "cause" requires a showing of some external impediment such as "government interference or the reasonable unavailability of the factual basis for the claim"). In his Petition, Petitioner makes no reference to any external factor or other impediment which caused him to default on this claim. This Court therefore finds that Petitioner has failed to establish cause sufficient to excuse his default. See Engle v. Isaac, 456 U.S. 107, 134 (1982). Given Petitioner's failure, this Court need not address prejudice. Id.

With regard to actual innocence, this Court may reach the merits of Petitioner's claim if he can demonstrate that its failure to consider it would result in a fundamental miscarriage of justice. See Noltie, 9 F.3d at 804-05. To satisfy this actual innocence exception, a habeas petitioner must offer new, reliable evidence of an alleged constitutional error that probably resulted in the conviction of an innocent person. See Schlup v. Delo, 513 U.S. 298, 324, 327 (1995). This evidence must be factual and indicate actual innocence, "as opposed to legal innocence as a result of legal error." Gandarela v. Johnson, 286 F.3d 1080, 1085 (9th Cir. 2001) (citing Schlup, 513 U.S. at 321).

As with "cause and prejudice," Petitioner offers no new evidence to support his self-representation claim that was not presented at trial. Nor does this Court find anything in the record to indicate that such evidence exists. This Court therefore finds that Petitioner has not adequately demonstrated a fundamental miscarriage of justice to excuse his procedural default.

For the foregoing reasons, this Court finds that Petitioner's claim that the trial court improperly denied his request for self-representation is procedurally barred. This Court also finds that Petitioner fails to present any argument with regard to this procedural bar, let alone an argument sufficient to overcome his default of this claim. Accordingly, this Court **RECOMMENDS** that Petitioner's final claim for habeas relief be **DENIED**.

### CONCLUSION AND RECOMMENDATION

In sum, this Court finds that Petitioner has failed to present any evidence suggesting that the California Court of Appeal's decision as to his claims was contrary to, or an unreasonable application of, clearly established federal law. See 28 U.S.C. § 2254(d). Nor has Petitioner made any supported argument that further factual development is necessary, such that an evidentiary hearing would be warranted. See 28 U.S.C. § 2254(e)(2) (exceptions where an evidentiary hearing may be appropriate). As such, this Court **RECOMMENDS** that Petitioner's Petition for Writ of Habeas Corpus be **DENIED** and the case dismissed with prejudice.

For all the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Court issue an Order: (1) approving and adopting this Report and Recommendation and (2) directing that Judgment be entered denying the Petition.

**IT IS HEREBY ORDERED** that any written objections to this Report must be filed with the Court and served on all parties **no later than November 3, 2006.**   The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties **no later than November 27, 2006.**   The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.   See <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998).

Dated: <u>October 13, 2006</u>

BARBARA L. MAJOR
United States Magistrate Judge

COPY TO:

HONORABLE LARRY A. BURNS
UNITED STATES DISTRICT JUDGE

ALL COUNSEL